545 So.2d 94 (1987)
Vernon MADISON
v.
STATE.
1 Div. 200.
Court of Criminal Appeals of Alabama.
March 10, 1987.
Rehearing Denied April 14, 1987.
On Return to Remand December 30, 1988.
Rehearing Denied January 27, 1989.
Certiorari Denied May 26, 1989.
*95 Karen A. Zokoff, Major E. Madison, Jr., Mobile, for appellant.
Charles A. Graddick, Atty. Gen., and P. David Bjurberg and William D. Little, Asst. Attys. Gen., for appellee.
Alabama Supreme Court 88-558.
TYSON, Judge.
Vernon Madison was indicted for and convicted of the capital offense of murder of a police officer, in violation of § 13A-5-40(a)(5), Code of Alabama 1975. The trial jury recommended, by an eleven to one vote, that the appellant be sentenced to death. This recommendation was accepted and imposed by the trial judge following a separate sentencing hearing.

I
The appellant contends his "equal protection of law rights" were violated by the State's use of its peremptory strikes to remove all seven prospective black jurors from the venire in this cause. The appellant made his objections to the selection of the jury known to the trial court during the selection of the jury for trial and he requested the court require the State to articulate some non-discriminatory reason for the exclusion of these blacks from the jury. This request was denied. (R. 176-179) The issue is thus preserved for review.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court determined that, once a defendant has established a prima facie case of racial discrimination based on the prosecution's use of its peremptory strikes to remove black persons from the venire, the burden is on the State to provide a neutral explanation for its use of its peremptory strikes.
The appellant here has made a prima facie case of purposeful discrimination based on the State's use of its peremptory strikes and, thus, the State is required to provide non-racial reasons for its strikes.
Batson, supra has been found to apply retroactively to any case pending on original direct appeal as of the date on which it was decided, April 30, 1986. See Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); Brown v. United States, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); Ex Parte Jackson, 516 So.2d 768 (Ala.1986); Ex Parte Zackery, 521 So.2d 1 (Ala.1987); Crawford v. State, 504 So.2d 1221 (Ala.Crim.App.1987).
Therefore, this cause is remanded to the trial court with instructions that a hearing be conducted with the appellant and his counsel present, at which the State shall be required to state its reasons for its use of its peremptory challenges to exclude black persons from the venire in this cause. Jackson, supra; Zackery, supra; Crawford, supra.
A return shall be filed in this court showing the testimony taken in circuit court on *96 this question and the findings of the trial judge, by written order, with reference to the evidence developed in this hearing. Such return shall, together with the trial judge's findings and order, be filed expeditiously in this court following the hearing in circuit court.
REMANDED WITH DIRECTIONS.
All the Judges concur.

ON RETURN TO REMAND
TYSON, Judge.
Vernon Madison was initially indicted for and convicted of the capital offense of the murder of a police officer in violation of § 13A-5-40(a)(5), Code of Alabama 1975.
The trial jury recommended that the appellant be sentenced to death by a vote of eleven to one. This recommendation was accepted and imposed by the trial judge following a separate sentencing hearing.
At trial the appellant contended that his rights under "Equal Protection of Law" were violated by the State of Alabama's use, through the district attorney's office, of its peremptory strikes to remove all seven prospective black jurors from the venire in this cause. The appellant had made known his objections to the selection of the jury to the trial court during this selection process and requested the court to require the State of Alabama, through the district attorney, to articulate some non-discriminatory reason for the exclusion of these blacks from this jury. This request was denied. (R. 176-179). The issue is thus preserved for our review.
Pursuant to the opinion of the Supreme Court of the United States in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and the opinion of the Supreme Court of Alabama in Jackson v. State, 516 So.2d 768 (Ala.1986), this court remanded this cause to the circuit court for a hearing on the basis of the allegations made by the appellant with reference to the striking of the seven prospective black jurors from the venire.
As directed, the circuit court has conducted a hearing on this question and has filed its return in this court as directed in this court's initial opinion in this cause.

I
With reference to the appellant's contention that his "Equal Protection of Law" rights were violated by the State's use of its peremptory strikes, as hereinabove set forth, the circuit court entered its order and judgment in this cause following the hearing which reads as follows:

"ORDER
"This cause was remanded to this Court by the Court of Criminal Appeals to determine whether the prosecution could provide non-racial reasons for its uses of peremptory strikes in selecting the jury which convicted the defendant and recommended a sentence of death by electrocution. Madison v. State, [545 So.2d 94] 1 Div. 200 (March 10, 1987).
"In compliance with that order and the mandate of Batson v. Kentucky, 476 U.S. [79], 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), this Court held an evidentiary hearing on May 1, 1987.
"The State presented the testimony of William Lloyd Copeland, who, at the time of trial, served as Deputy Chief Assistant District Attorney and was the prosecutor responsible for the State's jury selection. Mr. Copeland addressed the striking of those seven potential Black jurors struck by the State and, in the opinion of the Court, articulated a non discriminatory reason for their exclusion.
"The defendant was accused and convicted of murdering Cpl. Julius Schulte, an officer of the Mobile Police Department. Mr. Copeland testified that two potential Black jurors were struck because they lived in the Plateau region of Mobile County. According to his testimony, another police officer, Henry Booth, had been shot and killed in Plateau while attempting to arrest a Black man in 1980. Since that time there has existed, in Mr. Copeland's opinion, a hostile attitude *97 by the residents of Plateau towards the police.
"Yet a third potential Black juror was excluded by Mr. Copeland because he lived in the St. Stephens Road area of Mobile, which, according to Mr. Copeland, is another part of the City where "folks don't like the police".
"Two Black veniremen were struck because Mr. Copeland found their demeanor inappropriate. Though he had no independent recollection of these two potential jurors, Mr. Copeland cited examples of what he considered to be inappropriate demeanor, i.e. inattention, disinterest, and body language suggesting rejection of the prosecution.
"The exclusion of the two remaining Black veniremen was also explained by Mr. Copeland. One Black venireman was struck because he fell asleep during the jury selection process and another was struck because he was a mental health worker. Mr. Copeland stated that, in his opinion, mental health workers were sympathetic to defendants and, therefore, poor prosecution jurors. He further noted that the defendant had offered an insanity defense.
"The duty of this Court is not to evaluate the prosecutor's subjective theory of jury selection. Rather, the sole question presently before the Court is whether the State satisfied its burden of proof and provided a race neutral explanation for its peremptory strikes. The Court answers that question in the affirmative.
"After due consideration of all evidence, the Court finds as a proven fact that the exclusion of potential Black jurors was not the product of racial discrimination. Rather, the prosecutor's use of peremptory strikes was based on the facts of this particular case and the characteristics, other than race, of those persons challenged. Ex parte Jackson, [516 So.2d 768] (MS. 84-1112, December 19, 1986).
"Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that the defendant's contention of racial discrimination based on the prosecution's use of peremptory strikes to remove Blacks from the venire is without merit and the defendant is not entitled to a new trial on this basis.
"DONE this 5th day of May, 1987.
 "/s/ Ferrill D. McRae
 "Presiding Circuit Judge"
(R. 6-7)
This court also notes the comment of the trial judge on record 34 at the close of the hearing which indicates that the district attorney's office prepared the order and judgment as hereinabove set forth. The statement from the record reads as follows:
"THE COURT: As I understand Batson v. Kentucky, the Supreme Court of the United States held that if the State uses or the attorney for the Defendant thinks that they're using their peremptory challenges indiscriminately to strike blacksI might say that case does not say minorities, it says blacks. If the attorney for the Defendant objects, the burden then shifts to the State to show reasons why they struck the blacks. If there are reasons to strike the blacks, in accordance with Batson v. Kentucky, the Supreme Court of the United States has held that it is perfectly permissible. The State has demonstrated to me they had reasons. I see absolutely nothing wrong with it and I do not think Batson v. Kentucky applies. Therefore, Mr. Galanos, prepare an order for me to be sent to the Court of Criminal Appeals in compliance with their order.
"MR. GALANOS: Yes, sir.
"THE COURT: Good day, folks."
(R. 34-35)
At the hearing before the circuit court, Mr. Lloyd Copeland, who is currently a private practitioner, testified that in September, 1985, he was employed in the Mobile County District Attorney's office and was charged with prosecuting the Vernon Madison case. His jury strike list, or a certified copy thereof, was also placed in evidence in addition to the testimony given by Mr. Copeland on the manner in which he used his strikes. In his testimony, Mr. Copeland indicated that he struck certain *98 prospective jurors who lived in the Plateau, Alabama, area because this was an area in which one Henry Booth, a Mobile police officer, was killed while on patrol several years ago. Two of the black members of the venire were struck for this reason. A third black member of the venire was struck because he lived at "Alabama Village" in Prichard, which was in the part of the county near St. Stephens Road. Mr. Copeland testified that "there is just hostility to the police in this community. It's a matter of common knowledge amongst the legal community...." Two additional members of the jury venire, both black, were struck because [I] "don't like his demeanor at all either". An additional member was struck because he "fell asleep during voir dire and recess". Mr. Copeland testified that he struck seven blacks from the venire through the use of peremptory challenges. These were from the 36 members of the venire who made up the "capital venire" from which the trial jury was selected. Mr. Copeland testified that on cross-examination, "I remember they were all white", referring to the members of the trial panel who tried the case.
Without dispute in this cause, the victim was a white police officer and the appellant a black male.
This court has gone to the original record on trial to examine the voir dire in addition to the record presented in its return to remand. In Volume II of the original trial record in examining the voir dire examination of members of the venire, we find that the following occurred: (R. 94-96)
"THE COURT: Other than Lt. Manning, is any member of this jury or any member of this jury's immediate family involved in any police investigative work, whether it be for the Mobile Police Department or any other Police Department, the Sheriff's Department, any other Sheriff's Department, State Troopers, any other State Troopers, or the Federal Government, and I believe that's all inclusive. If you or any member of your family is involved in any police investigative work of any nature anywhere, please stand.
"JUROR: Charlie M. Dees, Jr., panel five and I have an uncle that works for the Prichard Police Department and two cousins work for the Mount Vernon Police Department.
"THE COURT: Okay, what is your name again?
"JUROR: Charlie M. Dees, Jr.
"THE COURT: Number 58. All right, Mr. Dees, do you know of any way that could affect you from rendering a fair and impartial verdict in this case?
"JUROR: No, sir.
"THE COURT: Thank you very much. Yes, sir?
"JUROR: My name is Arthur Christian. My brother is a deputy.
"THE COURT: Arthur Christian, number 23. Do you know of any way that could affect you from rendering a fair and impartial verdict in this case?
"JUROR: No, sir.
"THE COURT: Thank you very much.
"JUROR: Nelson Mozingo, Jr., panel two.
"THE COURT: All right.
"JUROR: My cousin is a sergeant on the Mobile Police Department.
"THE COURT: Could that in any way affect you from rendering a fair and impartial verdict in this case, sir?
"JUROR: No, sir.
"THE COURT: All right, thank you very much.
"JUROR: Donna Ainsworth, panel four.
"THE COURT: Donna again is number 41. All right, who is it, Donna?
"JUROR: My brother-in-law is a Prichard Policeman.
"THE COURT: All right, could that in any way affect you from rendering a fair and impartial verdict in this case?
"JUROR: No, sir.
"THE COURT: Thank you.
"JUROR: Joe McCarty, panel one.
"CLERK: His number is 13. He's the first one on two.
"THE COURT: I see, it's panel two.
"JUROR: I'm sorry.
"THE COURT: All right, Mr. McCarty. That's all right.

*99 "JUROR: I'm a member of the Mobile County Sheriff's Posse.
"THE COURT: You are?
"JUROR: Yes, sir.
"THE COURT: All right, could that in any way affect you from rendering a fair and impartial verdict in this case?
"JUROR: No, sir.
"THE COURT: Thank you very much."
(R. 94-96)
We set forth the above from the original examination of the venire called for trial of this cause to show that certain white persons who either had relatives with either police departments or sheriff's departments, or friends who were employed there, were left on the venire while the black persons challenged through peremptory challenges because they lived in an area which "reputedly was hostile to police" were stricken by the district attorney's office.
The striking of the black persons as hereinabove noted constitutes a violation, in our opinion, of the criteria set forth in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) as made applicable to the selection process in the State of Alabama through the opinion of the Supreme Court of Alabama in Ex parte Jackson, 516 So.2d 768 (Ala.1986).
In further defining the criteria in the State of Alabama for the selection of prospective jurors and to insure that the State give race neutral reasons for its striking of members of the jury, the Supreme Court of Alabama, in Ex parte Branch, 526 So.2d 609 (Ala.1987) has further defined these standards. We note that the Supreme Court of Alabama pointed out that the type and manner of the State's attorney's questions and statements during voir dire, including nothing more than desultory voir dire, is to be considered. Further, the type and manner of questions directed to the challenged juror, including a lack of questions or a lack of meaningful questions, citing with approval Slappy v. State, 503 So.2d 350 (Fla.Dist.Ct.App.1987), aff'd, 522 So.2d 18 (Fla.), cert. denied, ___ U.S. ___, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), in Ex parte Branch, is to be considered. Similarly, the Supreme Court of Alabama in Ex parte Branch pointed out disparate treatment of members of the same jury venire who answer a question in the same or similar manner or disparate examination of members of the venire.
This court in considering all of the foregoing criteria is of the view that the use of the peremptory challenges by the district attorney's office in the foregoing case was clearly error under the opinions herein set forth.
As noted in Ex parte Branch, 526 So.2d 609 (Ala.1987), the absence of voir dire questions directed to the challenged jurors must be weighed against the prosecution.
We are of the opinion that a prima facie case of racially discriminatory strikes was established under the testimony before the trial court. The State then had the burden, through the district attorney's office, of overcoming the presumption by showing that its strikes were race-neutral. The district attorney's general assertion that he did not strike jurors on the basis of race, but on other reasons which appear to us to be superficial and show a lack of proper examination of such jurors leaves this court no alternative but to reverse and remand this cause for a new trial because of the explanations given by the district attorney.
We, therefore, find that the trial court's determination that the district attorney's explanations were sufficient to overcome the presumption of discrimination and that his explanations were "race-neutral" fails to meet the requirements of Batson v. Kentucky and Ex parte Branch, as herein cited. The determinations of the trial court are clearly erroneous. Ex parte Branch. For this reason the appellant is entitled to a new trial.
We reverse and remand this cause to the trial court with instructions that it enter an order granting the appellant a new trial. Upon the filing by the trial court of this order, which the trial court shall furnish this court, we will then dismiss this appeal.
*100 The trial court shall appoint competent counsel to represent the appellant in the new trial proceeding.
For the foregoing reasons, this cause is reversed and remanded.
REVERSED AND REMANDED.
TAYLOR, P.J., concurs.
PATTERSON, J., concurs in result only.
BOWEN, J., concurs in result only with opinion in which McMILLAN, J., joins.
BOWEN, Judge, concurring in result only.
My individual review of this case convinces me that the prosecutor violated the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Branch, 526 So.2d 609 (Ala.1987), in some but not all of its peremptory challenges of black venire persons. However, I agree with neither the language employed nor the reasons given in the main opinion to support its conclusion. In particular, the fact that the prosecutor did not challenge white venire persons "who either had relatives with either police departments or sheriff's departments, or friends who were employed there," was perfectly proper, even if the prosecutor removed black prospective jurors who lived in an area which "reputedly was hostile to police." The fact that the prosecutor failed to strike venire members whom he suspected would favor law enforcement simply does not support a finding of unequal treatment of other venire members who might be prejudiced against or hostile toward law enforcement. This is comparing apples to oranges. Additionally, the fact that one venire member fell asleep during voir dire constitutes a valid challenge for cause.
In his order, the trial judge stated that "[t]he duty of this Court is not to evaluate the prosecutor's subjective theory of jury selection." Branch dictates otherwise:
"The trial judge cannot merely accept the specific reasons given by the prosecutor at face value, see [People v.] Hall, 35 Cal.3d [161] at 168, 672 P.2d [854] at 858-59, 197 Cal.Rptr. [71] at 75 [ (1983) ]; Slappy, 503 So.2d at 356; the judge must consider whether the facially neutral explanations are contrived to avoid admitting acts of group discrimination. See Slappy, supra. This evaluation by the trial judge is necessary because it is possible that an attorney, although not intentionally discriminating, may try to find reasons other than race to challenge a black juror, when race may be his primary factor in deciding to strike the juror." Branch, 526 So.2d at 624.
Here, the prosecutor's explanations are insufficient to overcome the presumption of bias and discrimination present in this case. For that reason, this Court has no choice but to reverse and remand.